[No. 1480. Decided December 27, 1894.]

THE STATE OF WASHINGTON, *Respondent*, *v.* BENTON WILSON, *Appellant*.

PROSECUTION FOR MURDER—SUFFICIENCY OF EVIDENCE—DIRECT-ING VERDICT—JUSTIFIABLE HOMICIDE—DANGER TO FAMILY.

In a prosecution for murder it is not error to admit in evidence a letter from deceased to a third person asserting defendant's indebt-edness to the deceased, when it has already been shown in evidence that defendant made inquiries in regard to it prior to the time of its receipt.

When the defendant in a criminal prosecution interposes a motion for a directed verdict in his favor, at the close of plaintiff's case, it is the duty of the court to deny the motion unless from a superficial examination it appears that the evidence is clearly insufficient to sustain the charge.

In a prosecution for murder in which a father, son and daughter are jointly charged with the crime, the defendants are not entitled to a verdict at the close of plaintiff's case, when it appears from the evidence that deceased was the husband of the daughter, that their marital relations had been unpleasant, that the father was seen with the deceased at about the time when, from the appearance of the body, he was killed, and that the greeting between them showed more or less hostility on the part of the father; and that, at the time the body was exhumed, about a year after death, it was in such a condition that one well acquainted with the deceased would be likely to recognize it, but that the brother acted as if he did not know whose body it was. (DUNBAR, C. J., and STILES, J., dissent.)

Where the evidence is of such a nature as to clearly warrant the verdict of the jury in a prosecution for murder, the verdict will not be disturbed on account of an erroneous instruction as to the weight to be given to proof of good character of the defendant.

In a prosecution for murder, defendant being placed upon the stand, testified that deceased had come to their house for an inter-view with his wife, who was defendant's sister; that she was fright-ened at his appearance and desired him to go away, but wished to

obtain from him a check to her trunk, which he had in his posses-
sion; that he finally started away without giving her the check; that
defendant went with him for the purpose of obtaining the check and
inducing him to go away and leave his sister alone; that at the time
defendant was informed by his sister that her husband had a re-
volver, and he must look out; that he walked with deceased for
about a mile, passing the father of defendant on his way home; that
during the walk he was trying to persuade deceased to give up the
check and go away and not try to have any further communication
with his wife; that at times he would promise to go away and at
others would threaten to go back and do violence to his wife or com-
pel her to live with him; that he finally gave to defendant the check
for the trunk, and they continued on together until the deceased de-
clined to go any further, and turning round said he would go back
and kill his wife and then himself; that thereupon defendant picked
up a stick and struck him a single blow, which killed him; that he
was frightened and dragged the body into the woods; and went back
to the house and told what he had done, afterwards returning and
burying the body. The autopsy of the body showed that a blow of
such violence had been given as to crush in the entire back portion
of the head and dislocate the neck. The deed was done more than
a mile from the house in which defendant's sister was with her father
and mother, and there were two guns in the house available for her
defense, which facts were all known to defendant. *Held,* that a ver-
dict of murder in the second degree was warranted. (DUNBAR, C. J.
and STILES, J., dissent.)

### Appeal from Superior Court, Spokane County.

On the trial of appellant the state introduced in evidence
a letter, written to the postmaster, Cowgill, and signed with
the name of the deceased, alleging that the Wilson family
owed the deceased money. There was evidence to show
that appellant had inquired of Cowgill whether he had got-
ten such a letter, and if he did to pay no attention to it, as
the person had written similar letters to other persons.

The instruction in regard to the weight to be given to proof
of character, of which the appellant complains, was as fol-
lows: "If, however, the jury should be satisfied beyond a
reasonable doubt of the guilt of defendants, after a full con-
sideration of all the evidence in the case, including the ev-
idence in regard to the character or reputation of defendants
as being peaceable, law-abiding persons before the present

charge *versus* them, then, though the jury might believe that defendants had a good character or reputation in that respect before the alleged killing of J. W. Johnson, that would not avail the defendants as defense or entitle them to an acquittal."

*W. T. Stoll*, for appellant.

Where the state has made a *prima facie* case, then the weight and sufficiency of the evidence are questions for the jury; but where the state fails to make a *prima facie* case, then there is nothing for the jury to pass upon, because, as a matter of law, there is no proof calling for the exercise of the jury's functions, and on the question of whether such a *prima facie* case is made as warrants the court in sending the case to the jury, the test is whether on the case as made the court should grant a new trial because of the insufficiency of the evidence. 1 Bishop, Crim. Proc. (3d. ed.), § 977; *People v. Bennett*, 49 N. Y. 137; *Reynolds v. People*, 41 How. Pr. 179; *Commonwealth v. Packard*, 5 Gray, 101; *Commonwealth v. Merrill*, 14 Gray, 415; *State v. Banks*, 48 Ind. 197; *United States v. Fullerton*, 7 Blatch. 177; *State v Dishman*, 74 N. C. 217; *Skinner v. State*, 30 Ala. 524; *State v. Baker*, 69 N. C. 147.

The instruction as to character not only comments on the facts, but it directs the jury what weight to attach to certain facts, and that, under certain conditions, they shall entirely disregard certain competent evidence. The best considered cases hold, even in the absence of a constitutional inhibition against commenting on facts, that such an instruction is not the law and amounts in itself to reversible error. *People v. Garbutt*, 17 Mich. 9; *Hamilton v. People*, 29 Mich. 195; *Felix v. State*, 18 Ala. 720; *Booker v. State*, 76 Ala. 22; *State v. Clemons*, 51 Iowa, 274; *People v. Jassino*, 59 N. W. 230.

*James E. Fenton*, Prosecuting Attorney, and *L. H. Plattor*, for the State.

The opinion of the court was delivered by

HOYT, J.—Appellant was charged jointly with his father, Charles Wilson, and his sister, Nellie Johnson, with the crime of murder in the first degree. A plea of not guilty was entered as to all of them, and they were tried together. Charles Wilson and Nellie Johnson were acquitted, and appellant was convicted of murder in the second degree, and from such conviction has prosecuted this appeal.

All of the errors assigned may be considered under four heads:   1, in admitting in evidence a certain letter from Johnson to Cowgill; 2, in denying the motion for a directed verdict for the defendants, at the close of the plaintiff's case; 3, error in instructing the jury; and, 4, in denying the motion for a new trial.

As to the first assignment it is not easy to see how this letter could have any particular connection with the question at issue before the jury, but it was so connected with the appellant by his inquiries in regard thereto before the time of its receipt by Cowgill that it was not error as against him to allow it to go in evidence.   But, whether it was or not, we should refuse to reverse the judgment on account of its admission in evidence, for the reason that we do not see how it could have influenced the verdict of the jury.

The second assignment presents a more difficult question, and, in order to decide it, it becomes necessary to determine the duty of a court in the trial of a cause to a jury, when a motion of this kind is interposed.   In our opinion it is its duty to deny the motion and allow the case to go to the jury unless there is such a want of necessary proofs as to make it clear that a verdict rendered thereon against the defendant would be set aside.   It is not sufficient to authorize the granting of such a motion that it should appear that upon a careful review of plaintiff's evidence it was not sufficient to support a verdict against the defendant, but it must further appear that such a result is so evident that the mind of the court would not hesitate in regard thereto.   Such motion is interposed during the pendency of the action before the jury, and it is the duty of the court to pass upon the same without that careful research and consideration which it should give to the same question upon a motion for a new trial, and since, if it commits error in denying such a motion, it can be remedied upon a more careful consideration after verdict, it is its duty to deny it unless, from a superficial examination, it appears that the evidence is insufficient.

Investigating the proofs offered by the plaintiff in the light of the above suggestions we hold that the action of the

court in denying the motion was proper.   The evidence was not very strong, but there were some circumstances proven from which the jury would have been warranted in inferring the guilt of the accused.   It was made to appear that the deceased person was the brother-in-law of the appellant, being the husband of Nellie Johnson, one of the defendants. It also appeared that there had been some interruption of the marital relations as between said defendant Nellie Johnson and her husband ; that Charles Wilson, the other defendant, was seen with the deceased at about the time when, from the appearance of the body, he was killed ; that the greeting between them at that time showed that there was more or less feeling on the part of said defendant against the deceased.

It further appeared that, at the time the body was exhumed, it was in a fair state of preservation, and in such a condition that one well acquainted with the deceased person would be likely to recognize it ; that the appellant saw the body after it was exhumed, but made no sign to in any manner show that he recognized it.   On the contrary his actions were such as to show that he clearly intended to have it understood that he had no knowledge whatever as to whose body it was.   These and some other incriminating circumstances which were proven, would have authorized the jury to infer the guilt of the defendants.

The instruction, which is the foundation of the third assignment, was as to the weight to be given to the good character of the defendant.   The instruction in that regard is not what it should have been, but we are of the opinion that the error could not have prejudiced the rights of the defendant, as the criticism which is made of it goes only to a case where there was positive proof as to the guilt of the defendant, and, except appellant's own statement, the evidence was all circumstantial.   But, however that may be, the verdict will not be disturbed if the proofs were of such a nature that the determination of the jury was clearly warranted.

It is claimed by the appellant that a new trial should have

been granted upon two grounds :   1st, newly discovered evidence ; and, 2d, because there was not sufficient testimony to sustain the verdict.

As to the first, the facts set up in the affidavits were not of such materiality that a new trial should be granted on the ground of their discovery subsequent to the trial.

The other objection requires a consideration of the facts testified to by appellant when placed upon the stand in his own behalf, which, briefly stated, were as follows :   That the deceased had come to their house for an interview with his wife ; that she was more or less frightened at his appearance, and desired him to go away ; that she was also desirous of obtaining from him a check for her trunk, which he had in his possession ; that he finally started to go away without giving her the check ; that the appellant went with him for the alleged purpose of obtaining from him the check and inducing him to go away and leave his sister alone ; that at the time appellant was informed by his sister that the deceased carried a loaded revolver, and that he must ''look out,'' or something to that effect ; that he walked with deceased for the distance of about a mile, during which time they passed Charles Wilson, the father of the appellant, on his way home ; that during the walk he was trying to persuade deceased to give up the check and go away, and not try to have any further communication with his wife ; that at times the deceased would appear to be reasonable and would say that he would go away, and at others he would threaten to go back, and do violence to his wife, or compel her to come with him ; that he finally gave to appellant the check for the trunk, and they continued on together until the deceased declined to go any further and turned around, saying that he would go back and kill his wife and then himself ; that thereupon appellant picked up a stick and struck him a single blow which killed him ; that he was much frightened and dragged the body into the woods, and went back to the house and told what he had done, and that afterwards he returned and buried the body.

This is the substance of the transaction as detailed by the

appellant.    The facts proven in connection with the autopsy of the body show that a blow of such violence had been received by the deceased as to crush in the entire back portion of the head and dislocate the neck.    The statement of the appellant, interpreted in the light of all the circumstances, seems to us to warrant the verdict of the jury.    His theory is that he was justified in what he did, upon the ground that it was in defense of his sister.    But we are unable to hold that his sister was shown to be in such imminent danger as to justify the taking of life.    The parties were more than a mile from the wife, and she was in the house with her father and mother, who had two guns available for her defense. These facts were all known to appellant.

Under these circumstances the right to interpose between the deceased and his wife by the use of such extreme measures as would necessarily cause death did not exist.    If it had been in the immediate presence of the wife, and a revolver had been drawn, and threats made as stated, no doubt any reasonable means to prevent the carrying into effect of the threats would have been justifiable.    Not only was the danger to the wife and sister remote on account of the facts above stated, but also for another reason.    It appeared that the deceased had been in the habit of threatening his wife, whenever he lost his temper, to such an extent that such threats did not make it probable that she would be injured ; much less did it make the injury so imminent as to justify such extreme measures for her protection.

Beside, the fact that such a crushing blow was delivered upon the back of the head tends strongly to discredit the statement of the appellant as to the homicide.    The weapon used must necessarily have been of such a nature that any one of ordinary prudence must have known that to strike a person upon the head with it was to cause death.    It follows that its use was only justified under circumstances of the greatest peril to the appellant or to a member of his family. And, when we consider the interest which the appellant had in coloring his testimony to shield himself, it seems much more probable that the real facts were that if the walk was

taken with the deceased, as testified to by appellant, the deadly blow was deliberately struck while he was walking by the side of, or behind, the deceased.

It is no doubt true that, excepting so far as guilt was shown by other proofs, the story of the appellant must be taken together, as well those parts which tend in his favor as those tending to criminate him, but it does not follow from this that the whole story should not be construed in the light of all the surrounding circumstances as shown by the nature of the wound and the probable character of the weapon with which it was inflicted.

We think defendant's own testimony showed that he was guilty at least of murder in the second degree, and that the verdict of the jury was abundantly sustained thereby.

Judgment and sentence will be affirmed.

SCOTT, J., concurs.

ANDERS, J. (*concurring*). — Upon a motion to direct a verdict of acquittal, I think the rule is that the evidence introduced by the state must be assumed to be true, and that the state is also entitled to the benefit of all legitimate inferences that may be drawn therefrom in its favor. And, applying this principle to the present case, I think the motion was properly denied. That the deceased was killed by violence was fully proved, and there were facts and circumstances tending to show that the defendant was the guilty party. Under no circumstances should the court direct the jury to acquit unless the evidence is such that there can be no honest difference of opinion as to its force and effect. But, whether this be the correct rule or not, in my opinion the verdict was fully justified by the defendant's own testimony. Having voluntarily made himself a witness, his testimony must be considered and interpreted in the same manner, and by the same rules, as that of any other witness. And according to his own testimony he killed the deceased without any legal excuse whatever, and the verdict and judgment should not be disturbed.

DUNBAR, C. J. (*dissenting*).—I am compelled to dissent from the majority opinion in this case. I think it was plainly the duty of the court to have instructed the jury to acquit the appellant when the state closed its testimony, and the appellant moved the court so to do. From the careful examination which I have given this record I am unable to find any testimony introduced by the state which would support the verdict in this case. There is certainly none pointed out by the majority opinion which rises to the dignity of testimony. It is true, as the majority say, that it was proven that the deceased person was a brother-in-law of the appellant, and that there had been some interruption of the marital relations existing between appellant's sister, Nellie Johnson, one of the defendants in this case, and her husband ; but certainly it cannot be maintained that it is sufficient testimony to warrant the conviction of a man for murder that the brother-in-law is afterwards found to have been murdered in the neighborhood.

The opinion also states that the other defendant, Charles Wilson, was seen with the deceased about the time when, from the appearance of the body, he was killed. I think the majority are mistaken in this conclusion. The body was not found for more than a year after the deed must have been committed, and the testimony shows that it was in such a state of decomposition that it was impossible to tell with any degree of certainty just when the death had occurred. Neither did it appear in the testimony, nor does it stand to reason, that a body under such circumstances could be in such a condition, being buried three or four inches below the surface of the ground, and having been mutilated by wild animals, and exposed to the changes of the seasons for that length of time, that it could be easily recognized, or recognized at all, without there were some definite marks preserved in the frame of the body. The fact is, as shown by the testimony, that the body was only identified as that of Johnson by a ring, and some other trinkets which were found in the immediate vicinity of the body, and it is not shown that the appellant here was acquainted

with these articles of jewelry, or knew that they were pos-
sessed by his brother-in-law, Johnson, the murdered man.

To sum up the testimony then, all there is upon which to
base a conviction is the fact that the murdered man was
found in the neighborhood about a mile distant from the
house of the appellant; that he was the brother-in-law of the
appellant; and that his relations with appellant's sister had
not been harmonious. Such a state of facts, if they war-
ranted anything at all, could only warrant the slightest and
vaguest suspicion. But under our law men should not be
convicted of murder on suspicion, even where the suspicion
is of a strong character, much less where it is of such a
flimsy character as in the present instance. It is a principle
of the law, as old as the law itself, that a defendant is pre-
sumed to be innocent until he is proven guilty. The burden
never was placed upon him to prove himself innocent, and if
the life of the citizen can be placed in jeopardy or sacrificed
upon bare suspicions like these, no person is safe, and what
we have always been taught about the tender solicitude of
the law for the life or liberty of its citizens becomes hollow
mockery, and it would seem that the policy of the law has
been changed, and that its policy now is that it is better
that ninety-nine innocent persons should be punished than
that one guilty one should escape.

The court in this instance certainly should not have pro-
nounced judgment upon the testimony offered, and it was,
therefore, its plain duty, it seems to me, to have granted the
motion asked for by the appellant. There is no question
here of weighing the testimony and of this court substitut-
ing its judgment on the weight of the testimony for the
judgment of the jury, for, as I have shown, there was
no testimony to weigh. Consequently there was no room
for the exercise of judgment. The state had absolutely
failed to make out a case. The presumption of innocence
had not in the least been disturbed at the time the state
rested its case, and this presumption, which is guaranteed by
the law to citizens charged with crime, is no meaningless
thing, and is not to be arbitrarily disregarded by juries or by

courts, and the judgment in this case can only be sustained by reversing the presumption and making the presumption of guilt attach upon the mere charge of the commission of crime, and placing the burden upon the defendant of proving his innocence.

But, going a step farther, even if the ruling that the appellant was rightly put upon his defense was correct, then all the testimony there was in favor of the state was the testimony of the appellant himself, and it must be accepted as true. I do not think I ever read the testimony of a witness which impressed me more forcibly with the idea that every word uttered was true, than the testimony of the appellant in this case, and if it was true then the act of the killing was justified. Here was this young man in a manly attempt to protect his sister from the violence of a malicious, half-crazed and irate husband, who came there, according to the testimony, for the purpose of compelling his wife to live with him or to kill her. The appellant was striving to lead him away from their home, and to persuade him to go out of the neighborhood and let his sister alone. He had succeeded in getting him about a mile from the house when, with the desperation of a madman, Johnson declared that he would go back. The testimony shows that he was a dangerous man ; that he had before attempted his wife's life with a revolver, and had been interrupted in the attempt. It might be possible that the appellant did not pursue the best and most reasonable course, or such a course as a man would adopt in his cool and deliberate moments, but he was acting under the excitement of the moment, and believing that he could only protect his sister and prevent a tragedy by disabling the deceased, he struck him with a club. The appellant was unarmed and the deceased was armed. He says he did not intend to kill him, and that being all the testimony there was on the subject, there being no circumstances in my judgment to prove any intention otherwise, it must be conceded that he did not intend to kill him. However, I am not at all certain that under the provocation he had he

would not have been justified even in attempting to inflict upon him a fatal injury.

Again, it is true it would have been the exercise of better sense to have made known to the community the result of this encounter instead of clandestinely burying the body as he did, but this probably he would have done had he had time to reflect. It is hard to tell what the ordinary person would do under the excitement of the circumstances surrounding this encounter. Whether guilty or innocent, the more frequently probably when guilty than when innocent, a panic of fear is liable to seize and control a person's mind and for a time dethrone reason. Being a stranger in the community, and feeling that his whole action and motive might be misunderstood and that he might be convicted of a crime of which he was not guilty (and the sequel of this trial, and of the action of the court in refusing to grant the motion of dismissal, on the conclusion of the state's evidence, shows that his apprehensions were well grounded), he made the mistake of attempting to conceal, rather than to expose, the whole transaction, and this, taking his own testimony, is the only iota of testimony which could in any degree be tortured into testimony tending to support the verdict in this case, and, as I have before said, I do not think this sufficient. I think, therefore, that the court erred in not granting the motion to dismiss, and in the second place, that there was no testimony in the case which can sustain the verdict. But, conceding that the jury had a right to believe a portion of defendant's testimony and discard the rest, there is absolutely nothing that would support a verdict for anything more than manslaughter. The judgment should, therefore, be reversed with instructions to the court to grant the order asked for by the appellant.

STILES, J. (*dissenting*).—I fully concur in the views of the Chief Justice. If the appellant and the other witnesses for the defense had not gone upon the stand, but the case had been submitted to the jury upon the evidence for the state alone, and if there had been a verdict of guilty, upon

an appeal to this court I am satisfied that the verdict would have been set aside even more promptly than it was done in the case of *State v. Pagano*, 7 Wash. 549 (35 Pac. 387), for there was far less evidence in the case before us than in Pagano's case. The only person who could possibly be said to have been implicated in the homicide by the evidence in chief was the father of appellant, who was informed against with him, but was acquitted, and I am impressed with the belief that appellant would never have been put upon the stand but for the fear he had lest, by some mischance, his father should suffer.