## Edwin Tindel v. The State.

### No. 4122. Decided June 14, 1916.

#### 1.—Seduction—Continuance—Incompetent Witness—Want of Diligence.

Where it was unreasonable to expect that the alleged absent witnesses could have been required to testify without incriminating themselves, and the other part of the motion showed a want of diligence, there was no error in overruling the application for a continuance. Following O'Neal v. State, 14 Texas Crim. App., 582, and other cases.

#### 2.—Same—Accomplice—Corroboration—Sufficiency of the Evidence.

Where, upon trial of seduction, the defendant, after the State closed its testimony, moved the court to instruct a verdict of not guilty on the ground of insufficient corroboration, which the court overruled, whereupon defendant proceeded to introduce his testimony, which materially aided the State's case and the testimony as a whole sustained the conviction, there was no reversible error.

#### 3.—Same—Charge of Court—Corroboration—Promise of Marriage.

Where the defendant excepted to the court's charge, instructing the jury on the crime of seduction on the ground that the court did not specifically instruct the jury that the prosecutrix must be corroborated, both as to an act of intercourse and the promise of marriage, and the record showed that defendant himself testified to the first act of intercourse at the time and place fixed by prosecutrix, and the circumstances corroborated her testimony on the question of promise of marriage, and the court properly applied the law to the facts, there was no reversible error. Following Williams v. State, 59 Texas Crim. Rep., 347, and other cases.

#### 4.—Same—Stating Facts in Opinion—Motion for Rehearing.

Where appellant objected to the language of the court in the original opinion with reference to corroboration, but the record bore out the court's statement, etc., there was no reversible error.

**5.—Same—Demurrer to the Evidence—Practice on Appeal.**

It is not the law that this court must pass on the sufficiency of the evidence at the time of defendant's demurrer thereto, but this court must look to the whole record and consider all the evidence adduced on trial.

**6.—Same—Continuance—Stating Facts in Opinion.**

Where this court, in passing upon the application for a continuance, may have made inadvertant statements as to the age of prosecutrix, yet the application showed a lack of diligence, there was no reversible error in overruling same.

Appeal from the District Court of McCulloch. Tried below before the Hon. Jno. W. Goodwin.

Appeal from a conviction of seduction; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Adkins & Adkins* and *Sam McCollum,* for appellant.—On question of overruling motion for continuance: Kelly v. State, 24 S. W. Rep., 295.

On question of demurrer to evidence: Gillespie v. State, 166 S. W. Rep., 135; Murphy v. State, 143 S. W. Rep., 616; Slaughter v. State, 174 S. W. Rep., 580; Garlas v. State, 88 S. W. Rep., 345.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of continuance: Stacy v. State, 77 Texas Crim. Rep., 52; Jones v. State, 144 S. W. Rep., 252; Giles v. State, 148 S. W. Rep., 317; Yelton v. State, 170 S. W. Rep., 318; Vernon's C. P. C., 310.

On question of corroboration: Gillespie v. State, supra; De Rossett v. State, 168 S. W. Rep., 531; Nash v. State, 134 S. W. Rep., 709; Slaughter v. State, supra; Bush v. State, 157 S. W. Rep., 944; James v. State, 167 S. W. Rep., 727; Knight v. State, 144 S. W. Rep., 967; Capshaw v. State, 166 S. W. Rep., 737

HARPER, JUDGE.—Appellant was convicted of seduction and his punishment assessed at three years confinement in the State penitentiary.

The first bill of exceptions relates to the action of the court in overruling his application for a continuance. Appellant was indicted at the September term, 1915, of the District Court of McCulloch County, while this trial was had at the February term of said court in 1916. When the case was called for trial on February 23 appellant moved to continue the case on account of his failure to secure the attendance of Messrs. Pinkney King and H. E. Rathburn. Appellant states he expects to prove by King that frequently during the years 1914 and 1915 he had carnal knowledge of the prosecutrix, Eda Bell Castleman, and by Rathburn that he had intercourse with the prosecutrix the same time from August, 1914, to August, 1915, that being the time Rathburn resided in McCulloch County. The materiality of such testimony readily appears, if they would so testify, as this is a case of seduction, and appellant is alleged to have seduced the prosecutrix in May, 1915. When this trial was had the girl and her mother both testify that she

was only sixteen years of age, consequently in 1914 she was under fifteen years of age, therefore it would not be reasonable to expect, nor could either of the witnesses have been required to testify they had intercourse with the girl in 1914—it would have made them guilty of rape to have so testified. As to the witness Pinkney King, it appears that when a complaint was filed against appellant in August, 1915, charging him with seduction, his father went to Pinkney King and had a conversation with him, and that King at once left the country. Appellant's father had a subpoena issued for him in September, 1915, and the return showed that King had left McCulloch County. Thus notice is traced directly home to appellant and his father that King had left McCulloch County at least in September, 1915, consequently an additional subpoena issued to McCulloch County in December, 1915, would be wholly lacking in diligence. In justice to counsel who appeared in this court in behalf of appellant, we will state that they stated they were not representing appellant at that time. So what we shall say in regard to lack of diligence will have no application to counsel. When the motion for new trial was heard, evidence was adduced, and it is made to appear that Pinkney King left McCulloch County immediately after appellant's father talked with him in August, and that he had never returned to that county; that the last letter received from him showed he was in Kansas City, Missouri, in December, 1915, and that his present whereabouts were unknown. By Will King, the same witness, appellant proved that Pinkney King had left McCulloch County in August, 1915, and was last heard from in Kansas City, Missouri, in December, 1915. It was proven on cross-examination that Pinkney King told him before he left McCulloch County, and after appellant's father had visited the witness, that he, Pinkney King, had never at any time had intercourse with the prosecutrix, Eda Bell Castleman. Under such circumstances there was no error in overruling the application as to this witness, as it was wholly lacking in diligence, to say the least.

As to the witness Rathburn, it shows that he had left McCulloch County August 4, 1915, prior to the institution of any prosecution of appellant, and that appellant was aware of that fact, and yet had no process issued for the witness until January 6, 1916, which process had been returned, witness not found. On the hearing of this motion for new trial evidence was heard, and it is made to appear that appellant did not know where Rathburn was then located, and it is not shown what efforts he had made to locate the witness. There is no showing made that the witness had stated or admitted to anyone that he had ever had intercourse with the girl, or that he had been associated with her. In fact, the witness called by appellant, W. H. Goodner, testified to intimate association with Rathburn, and about trouble he had about another girl and her father getting after him with a knife, but said Eda Bell Castleman was not that girl. "That Rathburn never did say anything to me about having intercourse with Eda Bell Castleman (the prosecutrix) or being with her, or anything that would lead me to

believe that he had intercourse with the prosecutrix." No such showing is made that either of the witnesses would probably testify that he had intercourse with the girl, as would authorize us to hold the court erred in not granting a continuance, when diligence to secure their attendance is wholly lacking. In such cases where it is made to appear that the witness or witnesses would testify as alleged, and it would show a complete defense, and some excuse shown for lack of diligence, we have held that justice demanded the person on trial be given an opportunity to secure the testimony, for this court and no other court would be willing to allow a person to be confined in the penitentiary when no crime had been committed. But no showing is made that the attendance of the witnesses could be had, or their testimony secured, even though a new trial was granted, or that the witnesses would so testify if secured. Mr. Goodner says Rathburn fled from an irate father of another girl; that he was short in his accounts, and he has never been heard from since his departure. O'Neal v. State, 14 Texas Crim. App., 582; Long v. State, 17 Texas Crim. App., 128; Boyd v. State, 57 Texas Crim. Rep., 647, and authorities collated in Branch's Penal Code, page 186 et seq.

When the State closed its testimony appellant moved the court to instruct a verdict of not guilty, on the ground that the prosecutrix had been insufficiently corroborated to sustain a conviction. When the court overruled this application, appellant proceeded to introduce his testimony, and the State its testimony in rebuttal. In passing on this question we do not consider whether or not the evidence, at the time the motion was acted on, was sufficient to sustain a conviction, but it becomes our duty to consider the testimony as a whole adduced on the entire case. Had the defendant declined to introduce testimony, and rested on his motion, then we would pass on whether or not the testimony at that time would sustain a conviction, for that would be all the testimony before us. But the appellant and his witnesses materially aided the State's case as made by the direct testimony. And as we are of the opinion the testimony as a whole will sustain the verdict, the court did not err in refusing to give peremptory instructions.

The exceptions filed to the court's charge, and a special charge requested by appellant, all present the issue that there was error in the court not specifically instructing the jury that the prosecutrix must be corroborated both as to an act of intercourse and the promise of marriage. Appellant himself testifies to the first act of intercourse at the time and place fixed by the girl. So there can be no question as to corroboration on that issue. The fact that she was only sixteen years of age (and under twenty-five) was amply corroborated by her mother, but on the question of promise of marriage there is no direct and positive corroboration of the prosecutrix. If corroborated as to this, it is from circumstances alone, such as he had frequently visited her at her mother's home, and had called to see her when she was staying at Mr. Mann's, prior to the time they, in company with others, went to the

negro meeting. Both appellant and the prosecutrix agree that this is the night the first act of intercourse occurred, and that it occurred some twenty-five or thirty minutes after they had separated themselves from the others and gone walking. She says that he then made a proposition of marriage and was accepted, and the act of intercourse subsequently occurred. This he denies. He says she readily submitted to him and nothing was said about marriage. The court instructed the jury:

"If from the evidence you believe that defendant had carnal intercourse with Eda Bell Castleman, but believe that at the time of the first act of intercourse she was not a chaste woman, or if you have a reasonable doubt of that fact, you will acquit the defendant even though you may believe such act of intercourse was accompanied by means of a promise of marriage.

"If from the evidence you believe that defendant had carnal intercourse with Eda Bell Castleman, and if from the evidence you believe that she was a chaste woman at the time of the first act of intercourse between she and defendant, but believe that she yielded to same to satisfy her own amorous passion, you will acquit defendant.

"If from the evidence you believe that defendant had carnal intercourse with Eda Bell Castleman, and if from the evidence you believe that at the time of the first act of intercourse, by and between them, said Eda Bell Castleman was a chaste female, but have a reasonable doubt as to whether or not defendant promised to marry her, the said Eda Bell Castleman, you will acquit him."

It is thus seen that the court submitted defensively for appellant every issue that the testimony raised in his behalf, and the only question left is, should the court have specifically instructed the jury as requested by appellant, that unless the jury found that the prosecuting witness, Eda Bell Castleman, "was corroborated both as to the act of intercourse and promise of marriage" to acquit appellant. We have some decisions so holding, but they were rendered prior to the rendition of the opinions in Williams v. State, 59 Texas Crim. Rep., 347; Howe v. State, 51 Texas Crim. Rep., 174; Nash v. State, 61 Texas Crim. Rep., 259. In the case of Campbell v. State, 57 Texas Crim. Rep., 301 (a seduction case), this court laid down a form of charge on accomplice testimony which was almost literally followed in this case, the only difference being that the court in this case required the jury to find that the corroborating testimony "connected" the defendant with the commission of the offense, instead of only requiring such testimony to "tend to connect" the appellant with the commission of the offense. All the above decisions were rendered prior to the writer's accession to the bench, and he followed them in the case of Murphy v. State, 143 S. W. Rep., 616, and such rule has prevailed since the rendition of the above decisions. While there is some conflict in the decisions of other States, as well as our own, the weight of authority seems to approve the rule announced in the Williams case, supra, under statutes worded as is the one in our code. While the charge as thus drawn is

sufficient, yet we would not be understood as holding that if *in the evidence* there were no facts and circumstances tending to support the girl's testimony that a promise of marriage had been made, that the conviction should or would be sustained. In this case such corroboration is shown, or the circumstances tend to show that she spoke the truth about the matter in that appellant frequently visited her at her home and at Mr. Mann's, and his conduct on those occasions.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### October 4, 1916.

HARPER, JUDGE.—Appellant in his motion for rehearing in this cause assigns but three grounds, the first being that the evidence is insufficient to convict, in that he contends there is no corroboration of the girl's testimony as to the promise of marriage. He seriously contends the following sentence in the original opinion is erroneous: "If corroborated as to this, it is from circumstances alone, such as he had frequently visited her at her mother's home, and had called to see her when she was staying at Mr. Mann's, prior to the time they, in company with others, went to the negro meeting." Appellant says: "If the State had shown such a state of facts as this, then corroboration would be shown, but we insist the court erred in such finding as to the facts." Appellant then contends all these visits were after the first act of intercourse. Appellant's counsel must not have read the record we have before us. By this record alone we must be governed. The first act of intercourse is shown both by the testimony of the girl and that of appellant to have occurred on the 3d day of May, 1915, the night appellant and this girl went to the church in company with his mother and others. The sister of the girl testified: "During the fall of 1914 and the spring of 1915 he (appellant) visited at our house. He would come over once a week and sometimes twice a week. He would average coming about two or three times a week. He directed his attention to Eda Bell (the alleged seduced girl) and his conversations were with her."

To the same effect is the testimony of Mrs. Castleman, and Mr. Mann testified that while Eda Bell stayed at his home appellant came to see the girl and no other man visited her. This testimony evidences that appellant called on the girl in 1914 and the spring of 1915, while the girl was at home and at Mr. Mann's, and the act of intercourse did not take place until in May, 1915, as testified to by both of them. Under such state of facts appellant says that under the record in this case he would admit corroboration, and such is the record we have before us, approved as a statement of the evidence introduced on the trial.

His second contention is that as he demurred to the evidence when the State rested, we should pass on the sufficiency of the evidence at that time to sustain a conviction and not take the record as a whole. Such is not the law, but we must consider all the evidence adduced on the trial in passing on that issue on appeal.

The third and last contention is that we erred in holding there was no error in overruling his application for a continuance. The girl testified she was only sixteen when the case was tried, and this led us to say that she would have been under fifteen at the time he stated he expected to prove certain facts by King and Rathburn in his motion for a continuance. Having our attention called to when she testified she would be seventeen, we want to say that perhaps we were in error in making the statement she would have been under fifteen at the time alleged. But we did not sustain the action of the court in overruling the motion for a continuance on that ground, but for lack of diligence in suing out process. Appellant again insists that we erred in stating that appellant's father testified process was issued for the witness King at the prior term of court. Again appellant must not have read the record we have before us. Appellant's father testified he went to see King, and the record shows that King left for "parts unknown" the next day. Appellant's father testified that on the following "Monday he had a subpoena issued for King." It is true he says he was not instrumental in having King leave the county, but, nevertheless, his evidence makes it plain that a subpoena was issued for King at the preceding term of court at which this case was tried and it then ascertained King had left McCulloch County. By exercise of the least diligence appellant could have learned that King was not in McCulloch County and had not been there since September. Having another subpoena issued for the witness to McCulloch County three or four months after that term of court and just before this trial would not be the exercise of reasonable diligence on his part. The record disclosed that King was out of the State and had been for some time, and there is nothing to indicate when he would come back into the State, if ever. As to Rathburn, he left McCulloch County "rather hurriedly" some six months before the trial, and appellant nor any other person, so far as this record discloses, had been able to locate him from that day until the date of the overruling of the motion for a new trial. Appellant can not contend that he made any showing that he would ever be able to secure the attendance of either of the witnesses named.

The motion for rehearing is overruled.

*Overruled.*