[No. 25100. Department One. August 27, 1934.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN BROWN, *Appellant*.[1]

[1]Reported in 35 P. (2d) 99.

*Bonsted & Nichoson,* for appellant.

*O. Sandvig* and *M. C. Delle,* for respondent.

BEALS, C. J.—The prosecuting attorney of Yakima county by information charged defendant, John Brown, with the crime of murder in the first degree, committed by shooting one Ubale Desallier on or about the seventh day of September, 1932. Defendant pleaded not guilty, and in due time the case proceeded to trial before the court and a jury.

At the close of the state's case, defendant moved the court as follows: (1) to withdraw from the consideration of the jury the charge of murder in the first degree; (2) to withdraw from the consideration of the jury the charge that the defendant was guilty of murder in the second degree; and (3) that the court instruct the jury to bring in a verdict of not guilty. The state conceded the first motion, and the court accord-

ingly granted defendant's motion to withdraw from the consideration of the jury the charge of first degree murder. The other motions were by the court denied, and the cause proceeded upon the charge of murder in the second degree. The jury found defendant guilty of murder in the second degree, and from judgment and sentence pursuant to this verdict defendant appeals.

Error is assigned upon the refusal of the court to strike the testimony of the witness R. M. Welshons; upon the denial of appellant's motion for a directed verdict in his favor at the close of the state's case; upon the denial of appellant's motion for a directed verdict of not guilty made at the close of the case; upon the giving of certain instructions; upon the denial of appellant's motion for judgment in his favor after the rendition of the verdict of guilty; and upon the denial of his motion to set aside the verdict or in the alternative for a new trial.

It appears that the deceased, Ubale Desallier, had, at about eight o'clock on the evening of September 7, 1932, come to the home of Clyde Nell, located near the home of appellant, and stated that he had been shot and needed a doctor. Mr. Nell and another neighbor hurried Desallier to a hospital in Yakima, where he died shortly after his arrival. The physicians who performed the autopsy testified that he had been shot; that the bullet had entered his back about two inches to the right of his spine, between the tenth and eleventh ribs.

Appellant's married daughter, Irene Williams, testified both as a witness for the state and for appellant. She stated that she had lived with her father for three or four years, and that she had known Desallier for about the same period; that he assumed to care for the witness, and wrote her letters expressing affection. It appeared that the witness and Desallier were both mar-

ried; and that Mrs. Desallier had asked the witness not to associate with Desallier, and that the witness had promised Mrs. Desallier that she would no longer do so. Mrs. Williams testified that her father objected to her association with Desallier, and that the latter did not call at appellant's house, but met the witness elsewhere.

It appears that, after Desallier had been shot, his automobile was found on a side road near appellant's ranch.

Appellant, taking the stand on his own behalf, testified that, on the day of the shooting, he was fixing a wire fence on his farm, and that a man who he thought was his son-in-law Williams came up and struck at him with a stick or club of some sort; that the club struck first a fence post, and bouncing off struck appellant on the side of his head, throwing him to his knees; that he grappled with the man and drew a twenty-two-caliber pistol which he had in his pocket, intending to strike his assailant and "knock him out;" that the gun was discharged in the scuffle, he having no intention to fire it, and that he did not know where the bullet went; that the man then turned and walked off, uttering threats against appellant; that appellant did not know that the man had been shot. Appellant further testified that he left home early the next morning and drove to Seattle, and that, while there, he learned that he was charged with having shot a man the night before.

Roy M. Welshons, a witness for the state, testified that the bullet taken from Desallier's body at the autopsy was twenty-two caliber, and could have been fired from a twenty-two-caliber pistol or revolver. At the close of the state's case, appellant moved to strike Mr. Welshons' tesimony to the effect that this bullet could have been fired from a twenty-two-caliber re-

volver or pistol, there being no evidence in the case that connected appellant with any such weapon.

Appellant assigns error upon the refusal of the trial court to grant this motion, admitting, however, that the description of the bullet as to its caliber was competent. The fact that a twenty-two-caliber bullet could be fired from an arm of that caliber, whether pistol, revolver or rifle, would seem self-evident, and we find no prejudicial error in the failure of the trial court to grant appellant's motion to strike that portion of Mr. Welshons' testimony above referred to.

Appellant next contends that the trial court erred in denying his motion for a directed verdict of not guilty made at the close of the state's case. Appellant failed to stand upon his motion, but proceeded to introduce testimony on his own behalf. The rule is stated in 16 C. J. 938 (Title, Criminal Law) as follows:

"Although there is authority to the contrary, as a general rule a motion for a directed verdict, made at the close of the case for the prosecution and overruled, is waived by defendant proceeding with the trial and introducing evidence, unless the evidence introduced has no bearing on the merits of the case."

We are satisfied that the text cited is a correct statement of the law, and that, in a criminal trial, a defendant who moves for a directed verdict of acquittal at the close of the case for the prosecution, but when the same is overruled fails to stand on his motion and proceeds to introduce testimony on his own behalf, waives his motion, and that, on appeal from a judgment of guilty, the entire record must be searched in determining whether or not the one convicted was entitled to judgment in his favor as matter of law.

Appellant, in support of this assignment of error, cites the opinion of this court in the case of *State v. Pagano*, 7 Wash. 549, 35 Pac. 387. While the opinion

in the case cited refers to a motion for dismissal made at the close of the state's case, it appears from the opinion that the court passed upon the entire evidence, including that introduced by the defendant, and based its conclusion that the judgment and sentence must be set aside upon the entire record.

In the case of *State v. Wilson,* 10 Wash. 402, 39 Pac. 106, the majority of the court held that the judgment based upon a verdict of guilty of murder in the second degree should be affirmed. In the opinion an assignment of error based upon the refusal of the trial court to grant the defendant's motion for a directed verdict made at the close of the state's case was discussed, but the case is not an authority for the proposition that appellant's assignment of error now under discussion should be granted.

In the case of *State v. O'Hara,* 17 Wash. 525, 50 Pac. 477, 933, a judgment of guilty was reversed, the court referring to the defendant's contention that the state's evidence was insufficient to sustain the verdict of guilty. It is clear that the court considered the entire record in determining that the verdict of guilty should be set aside.

In none of the cases cited was the question now presented discussed, and we adhere to the doctrine laid down in the foregoing quotation from Corpus Juris.

This rule is supported by the following authorities: *Wilson v. Haley Live Stock Co.,* 153 U. S. 39, 14 S. Ct. 768; *Leyer v. United States,* 183 Fed. 102; *Pistillo v. United States,* 26 Fed. (2d) 202; *Briggs v. People,* 76 Colo. 591, 233 Pac. 836; *State v. Lackey,* 230 Mo. 707, 132 S. W. 602; *Tindel v. State,* 80 Tex. Crim. App. 14, 189 S. W. 948; *State v. Wolff,* 173 Iowa 187, 155 N. W. 165.

We shall now consider appellant's assignments of error based upon the denial of his motions for judg-

ment in his favor upon the ground that the entire evidence was insufficient to justify the submission of the case to the jury or to support the verdict of guilty and judgment and sentence pursuant thereto.

Appellant argues that intent to commit a crime or perform an act from which a criminal intent may be inferred must in such a case as this ''be proven beyond a reasonable doubt, and that there must be some evidence of such an intent to support a verdict'' of guilty. He earnestly contends that the record fails to disclose any evidence of criminal intent on his part. Appellant admits that, on the night of September 7, 1932, he engaged in a scuffle with a man whom he claims he did not know, and who he testified was the aggressor in the affair, and that, in the course of the struggle, his twenty-two caliber pistol was discharged.

It is not questioned but what Desallier met his death on the night of September 7, 1932, as the result of a gunshot wound. From the evidence, the jury believed that appellant had inflicted that wound. Careful study of the evidence convinces us that the jury may have believed that, as to certain matters, appellant and other persons testifying on his behalf did not tell the truth. It was, of course, the province of the jury to pass upon disputed questions of fact.

In certain cases, a homicide having been proven, the presumption arises that the same constitutes murder in the second degree. In the case at bar, the charge of murder in the first degree was withdrawn from the consideration of the jury.

We are satisfied that the record contains evidence which warranted the jury in finding that the intent necessary to support a verdict of guilty of murder in the second degree was proven. The verdict is supported by competent evidence.

Appellant next argues that the trial court

should have granted his motion for a new trial because of misconduct of the prosecuting attorney. As its first witness, the state called Victor Kroum, son-in-law of appellant. The bailiff reported that Mr. Kroum was not present, and after some discussion between the court and counsel for the state, the court directed that a bench warrant be issued, whereupon the prosecuting attorney remarked, "You are not starting that on us already, are you?" to which appellant's counsel objected. The court did not hear the remark of counsel, but upon explanation being made, instructed the jury to disregard any statement of counsel and the trial proceeded.

Counsel for respondent frankly admits that he made the remark and that the same was improper, but in view of the prompt instruction of the trial court that the jury disregard the same, it can not be held that the conduct of counsel was so prejudicial to the rights of appellant as to require the granting of a new trial.

■ Appellant also complains of certain questions propounded on cross-examination to one of his witnesses who had testified to appellant's good character. Appellant concedes that it is the rule that a character witness may be cross-examined as to reports which he had heard or facts otherwise known to him, or as to what he has himself said concerning the character of the person about whom the inquiry is being made; and that the witness may be interrogated in connection with certain specified transactions within the reasonable range of the direct examination, the object of such inquiries being merely to test the accuracy and candor of the witness. 22 C. J. 483 (Title, Evidence, § 581).

The rule is stated in 71 A. L. R. 1504 as follows:

"According to the overwhelming weight of authority, a witness testifying to the good reputation or character of a defendant in a criminal prosecution may be

interrogated on cross-examination with respect to rumors or reports of particular acts imputed to the defendant, and as to what the witness has heard of specific charges of misconduct made against the defendant.''

In the case of *State v. Presta,* 108 Wash. 256, 183 Pac. 112, this court held that:

''It is certainly proper cross-examination to compel the witness to admit that he has heard rumors of individual acts of the appellant which would tend to show that his reputation in the community was not good.''

Considering the discretion vested in the court as to questions propounded on cross-examination, we fail to find any reversible error or prejudicial misconduct of counsel in connection with the cross-examination of appellant's character witness.

By instruction No. 4, the court defined murder in the first degree, murder in the second degree, and manslaughter, having previously instructed the jury that all question of murder in the first degree had been withdrawn from the consideration of the jury; and that the jury, if they should find appellant guilty, could find him guilty only of murder in the second degree or manslaughter. Appellant excepted to that portion of instruction No. 4 which defined murder in the first degree, contending that, since that charge had been withdrawn, an instruction defining a crime with which appellant was not charged was confusing to the jury and prejudicial to appellant.

It is, of course, true, as a general proposition, that the court should instruct only upon issues which are properly in the case and upon which the jury must pass. *State v. Phillips,* 27 Wash. 364, 67 Pac. 608; *Everett v. Simmons,* 86 Wash. 276, 150 Pac. 414. This general rule, however, does not require a holding that, in all cases, an instruction covering a matter without

the direct issues to be determined by the jury should be held to constitute prejudicial error. In this connection, appellant relies upon the opinion of this court in the case of *State v. Hessel,* 112 Wash. 53, 191 Pac. 637, in which, in a prosecution for bootlegging, one convicted of that offense was held entitled to a new trial because the trial court at considerable length instructed the jury concerning other sections of the statute dealing with intoxicating liquor, thereby, as this court said,

". . . calling their attention to matters upon which there was no evidence, and to a crime with which the defendant was not charged."

In the case cited, the trial court, after referring to other sections of the statute creating offenses connected with the possession of or traffic in intoxicating liquor, instructed the jury that it was not necessary for the state to prove certain matters referred to in the section of the statute referring to a different offense from that with which the defendant was charged, and this court properly held that the phantom issue so raised and laid by the trial court might well have confused the jury and seriously prejudiced the defendant's rights.

It is true, as argued by appellant, that, in the case at bar, the issues to be determined by the jury concerned only appellant's guilt or innocence of the crimes of murder in the second degree and manslaughter.

The statutory definition of the crime of manslaughter reads as follows:

"In any case other than those specified in sections 2392, 2393 and 2394, homicide, not being excusable or justifiable, is manslaughter." Rem. Rev. Stat., § 2395.

The court properly instructed the jury as to the statutory definition of the crime of manslaughter, and the same, referring, as it does, to the crime of murder

in the first degree, makes an instruction concerning the definition of the latter crime proper in such a case as this.

The jury were properly instructed that all question as to the possible guilt of appellant of the crime of murder in the first degree had been withdrawn from their consideration, but in view of the fact that appellant stood charged with the crime of murder in the second degree and, of course, the lesser included crime of manslaughter, the brief instruction defining the crime of murder in the first degree was correct.

Appellant next complains of two other instructions of the trial court in which it is contended that the court unlawfully commented upon the evidence. In one of the instructions the jury were told that

"When a homicide is committed by the intentional use of a deadly weapon in a deadly manner, the presumption is that the killing was committed with a design to effect the death of the person killed, and therefore is murder in the second degree;"

but that, if from the evidence the jury had a reasonable doubt as to the existence of such design to effect death, the presumption would be overcome.

Appellant argues that, by this instruction, it was indirectly assumed that a homicide had been committed, and that the instruction did not distinguish between the commission of the homicide and proof of its commission. While the words "proof" or "proven" are not used in the instruction, it is not obnoxious to the criticism raised by appellant. The court instructed the jury that they were the sole judges of the facts, and that

"If at any time it has appeared to you that the court has indicated an opinion of what any disputed fact is, or what has or has not been proven, you should wholly disregard such intimation of opinion, as the same, if made, was inadvertent and unintentional."

The court also instructed the jury that the burden rested upon the state to prove every material allegation of the crime charged beyond a reasonable doubt, and that, before they could find appellant guilty, they must find that appellant shot and mortally wounded Desallier, and that, if they found that the defendant (appellant) shot Desallier without an intent or design on his part to shoot the deceased, it would be their duty to acquit appellant.

In support of his contention that the instruction above referred to should be held erroneous, appellant cites the case of *State v. Walters,* 7 Wash. 246, 34 Pac. 938, 1098, in which it was held that the trial court had invaded the province of the jury and commented on the facts of the case to the prejudice of the defendant. In the case cited, it appears that, in one instruction, the court told the jury that "it is only necessary to allege the date in order to identify the crime," the appellant (defendant below) contending on appeal that the instruction constituted reversible error. This court held that the language quoted was general, and that the jury could not have understood the same as indicating an expression of opinion by the court to the effect that a crime had been committed. This court, however, held that other instructions given by the court constituted reversible error entitling the appellant to a new trial. One instruction quoted in the case cited was complained of by the appellant, who contended that it constituted a comment upon the evidence, as well as being an incorrect statement of the law. This court held the instruction bad, but apparently because it did not lay down the correct legal rule. Other instructions were, however, held bad, the court holding that they constituted comments upon the facts.

In the case at bar, the instruction of which appellant complains differs from those which the court in the

case cited held erroneous, and the case cited does not support appellant's argument against the instruction here complained of. True, in the case now before us, the court used the word *when,* instead of *if,* but the thought is the same, no matter which word be used. *State v. Haberle,* 72 Iowa 138, 33 N. W. 461.

It can not be held that the instruction above referred to constituted any unlawful comment upon the evidence, or that, by it, the court directly or indirectly assumed any fact to appellant's prejudice.

By the other instruction of which appellant complains, the jury were told that one of the essential elements of the crime of murder in the second degree is an intention to kill; that such an intent need not necessarily be proved by direct testimony, but may be inferred by the jury from facts and circumstances proven beyond a reasonable doubt, provided that such facts and circumstances convince the jury beyond a reasonable doubt of the intent; that every person is presumed to intend the natural and ordinary consequences of his voluntary act, and that this presumption should prevail unless the jury from consideration of all the circumstances of the particular case before them, as disclosed by the evidence, should entertain a reasonable doubt as to whether or not such intention did in fact exist.

Appellant argues that this instruction constitutes a comment upon the evidence, and that, in so far as it referred to a legal presumption, it was in conflict with the instruction given as to the presumption of innocence.

In support of his attack upon this instruction, appellant cites the case of *State v. Dolan,* 17 Wash. 499, 50 Pac. 472, an appeal from conviction of the crime of assault with intent to murder. It was held that the court in its instructions had invaded the province of

the jury, and "assumed to draw the proper inferences from hypothetical facts stated, as a mere presumption of law."

We have carefully read the cases cited and authorities relied upon by appellant in support of his argument against the instruction now under discussion, and we fail to find that, by it, the trial court offended against the rules invoked by appellant. The instruction, of course, must be considered in connection with the other instructions given, and it is impossible to imagine that the jury could in any manner have been confused or misled to appellant's prejudice.

Finding no error in the record, the judgment appealed from is affirmed.

MITCHELL, MILLARD, STEINERT, and MAIN, JJ., concur.

