[No. 31969.   Department One.   December 11, 1952.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM ALLEN
DILDINE, *Appellant.*[1]

[1]Reported in 250 P. (2d) 951.

*Harwood Bannister* and *John W. Brisky,* for appellant.

*Reuben C. Youngquist* and *Charles F. Stafford, Jr.,* for respondent.

DONWORTH, J.—The defendant was charged by information with the crime of assault in the second degree, under the provisions of subdivision (3) of RCW 9.11.020, in that he did willfully inflict grievous bodily harm upon the person of another by beating her about her head and shoulders with his hands and fists. A trial was had before a jury. Defendant's motion for a dismissal at the close of the state's case was denied, and he then introduced evidence in his own behalf.

The jury returned a verdict of guilty. Defendant filed his motions in arrest of judgment and in the alternative for a new trial. The court denied these motions and entered judgment and sentence upon the verdict. Defendant has appealed, making four assignments of error.

His first assignment is that the court erred in denying his motion to dismiss at the close of the state's case. He did not stand upon his motion, but proceeded to introduce evidence in his own behalf. He thereby waived his motion and cannot urge the court's denial thereof as error. *State v. Brown,* 178 Wash. 588, 35 P. (2d) 99.

As an aid to understanding of the remaining assignments of error, we refer briefly to the evidence presented by the state which the jury had a right to believe.

The prosecuting witness, a widow fifty-seven years old, returned home about one a. m., October 19, 1950, after clos-

ing a restaurant she owned and operated in Anacortes. She attempted to turn on the electric light in her living room, but (as was afterwards discovered by the police) the bulb had been unscrewed in the socket and the light did not go on. She crossed the living room to her bedroom, and while still in the dark she was seized from behind, her face was covered with a cloth saturated with cleaning solvent, and she was brutally beaten about the head and shoulders. She was rendered unconscious two or three times during this ordeal.

As a result of the attack, she was in the hospital for ten days and was unable to work at her restaurant for three months. In addition to numerous severe bruises which she received, she lost her hearing in one ear and some front teeth were broken. The attending doctor testified that her injuries were painful and serious.

Appellant was arrested shortly after ten a. m. on the same day, some nine hours after the attack. He was taken to the city jail in Anacortes. Later that day, he was questioned by the chief of police and later wrote out and signed a statement parts of which were suggested by the chief. He was not warned that he had the right to remain silent. No threats were made nor promises held out as an inducement. In this statement, he admitted that he had unscrewed the light bulb in the prosecutrix's home, had waited until she returned, and had then "struck her several times about her head." The statement concluded: "This statement is made in my own handwriting and I know it may be used against me."

In the evening of the same day, appellant was transferred to the county jail at Mount Vernon. He was then interviewed by a deputy prosecutor, to whom he made substantially the same admissions.

Five days later, the same deputy prosecutor took a written statement from appellant without advising him that he had the right to remain silent or that anything he said might be used against him. No threats or promises were made.

The second statement, which was written by the deputy prosecutor and was read and signed by appellant in the presence of two witnesses, read as follows:

"My name is William Allen Dildine. I am 26 years of age and reside at 1211 6th St., Anacortes Washington. I am a fisherman by occupation. I make this statement of my own free will without threats or promises of any kind, knowing the same may be used *for* against me.

"On the 18th of October, 1950 at about 3:30 P. M. I met Dick Green and Ann Neilson at the Windmill restaurant when they got off work. We rode around Skagit and Whatcom County for about five hours. During this period the three of us consumed about 2 one-fifths of whiskey.

"At about 8:30 P. M. they dropped me off at the Sucia Reef, as Dick had to go home. He is morning cook at the Windmill Cafe.

"From 8:30 to about 1:30 I do not remember anything of what happened. At some time during this period, I found myself at the Alta Green residence at 1405 15th St. Anacortes. I don't know exactly why I had gone there. I knew both Dick Green and Alta Green, his mother. Dick used to live there and I went there a lot. I might have intended to rob Mrs. Green when she come home.

"At some time while in there I unscrewed the light bulb from the living room ceiling. I don't remember just when I did this. It might have been just before Mrs. Green come in.

"Finally, after I had been there for some time, I saw a car drive up. I thought about leaving then, but had dropped my jacket and couldn't find it.

"Mrs. Green unlocked the front door and flicked the switch in the living room. When the light didn't go on she started for the bedroom which is only partly shut off from the living by a partition. As soon as she entered the bedroom I pushed a rag into her face, or at least tried to. I don't know where I got this rag.

"At this time Mrs. Green started to scream. She grabbed my hand and bit me. I struck her. I was trying to hit her behind the ear to stun her. I struck her a half dozen times perhaps with my open hand. She staggered back away from me and stopped screaming.

"From this point on, I don't remember what happened. I can remember going out the front door. It was wide open. I suppose that I went right home from there.

"The next thing I remember was getting up the next morning about 10:00 A. M. I went down to the Windmill and heard the story of Mrs. Green's beating from Dick Green and Ann Neilson. I hadn't realized until that time that Mrs. Green was hurt as badly as she was.

"About noon, I was arrested by Gilbert Lee of the Anacortes Police Department.

"This is an account of what happened on the night of the 18th and morning of the 19th of October, 1950 to the best of my recollection.

"This is the fourth of a four page statement."

In addition to these two statements, there was evidence as to two physical facts presented to the jury. One was that footprints made by shoes with lug-type soles were found on the linoleum in the prosecutrix's home. When arrested, appellant was wearing shoes with lug-type soles of the same pattern. The second matter concerned the light globe which the officers removed from the fixture in the prosecutrix's living room. This was sent to the Federal Bureau of Investigation in Washington, D. C., and at the trial an agent of the bureau identified latent fingerprints on the light globe as being appellant's.

Appellant took the stand in his own behalf and testified that during the afternoon prior to the day of the assault he had become so intoxicated that he could not remember anything that transpired during the evening and early morning. He did not recall anything until he awoke in his own bed at his home about five a. m. He went to sleep again and awakened briefly several times until he arose about ten a. m. He then went down town, where he was subsequently arrested.

With respect to the two written statements, he testified that he now believed they were not true; that in making them he had relied upon statements made by the chief of police to the effect that his footprints had been found in the prosecutrix's home, and that he must, therefore, have committed the assault. He stressed the fact that his clothes had been taken from him prior to his making the first statement, that he had been kept in a cold cell without adequate clothing or covering, and that his mind was still "foggy"

from the whiskey he had consumed the night before. He also testified that he had merely copied his first statement from one which the chief of police had typed out in full, and that the chief had made a threat that "it would go worse if I didn't make a statement than it would if I did make a statement."

In the particulars in which appellant's testimony was in conflict with that of the state's witnesses, the verdict of the jury resolved those questions of fact against appellant, and the only problem presented to this court is whether the trial court committed reversible error as to any matter specified in the assignments of error.

This brings us to a consideration of appellant's second assignment, which is that the trial court erred in admitting in evidence the two written statements described above. His sole argument is that the confessions were obtained in violation of the state constitution, Art. I, § 9, and the fifth amendment to the Federal constitution, in that he was not advised by his inquisitors that he had the right to remain silent and that anything he said might be used against him.

■ The fifth amendment to the Federal constitution is a limitation upon the powers of the Federal government and has no application to the powers of the state. *In re Huffman v. Smith,* 34 Wn. (2d) 914, 210 P. (2d) 805.

Each statement was read by appellant prior to his signing it, and each stated that he knew it could be used against him. We think this is sufficient answer to his complaint that he was not advised that his statements could be so used.

■ We find no merit in his argument that his constitutional rights were violated by reason of the failure of his inquisitors to advise him that he might remain silent and refuse to incriminate himself. Appellant is a high school graduate and possessed of at least average intelligence. The jury was entitled to believe that no threats were made nor inducements offered to obtain either of these statements which constituted extrajudicial confessions. There is nothing in the record to suggest a violation of his constitutional rights, and it was not error to admit these statements in

evidence. *State v. Brownlow*, 89 Wash. 582, 154 Pac. 1099; 18 L. R. A. (N.S.) 791; 50 L. R. A. (N.S.) 1083.

█ In his third assignment of error, appellant complains of two instructions given by the court and of its refusal to give two requested instructions. Three of the instructions referred to have not been set out in the brief and, therefore, will not be considered. *State v. Cooney*, 23 Wn. (2d) 539, 161 P. (2d) 442; *Bremerton v. Smith*, 31 Wn. (2d) 788, 199 P. (2d) 95.

The fourth one referred to was the court's instruction No. 8, reading as follows:

"Every person who shall assault another and thereby willfully inflict grievous bodily harm upon such other person, either with or without a weapon, is guilty of Assault in the Second Degree."

There was testimony by the prosecuting witness, to which appellant objected, that her attacker had hit her with something which was very hard, and that she later found in the kitchen of her home a piece of pipe which she thought was the object used. The information charged a beating by appellant with his hands and fists, and he argues that the instruction above quoted allowed the jury to find him guilty if it believed he had struck the witness with a piece of pipe or other object.

But in the following instruction (No. 9), the court charged that, in order for the jury to find the appellant guilty of assault in the second degree, the state had to prove beyond a reasonable doubt that, at the time and place alleged in the information, appellant willfully and unlawfully inflicted grievous bodily harm upon the person of the prosecuting witness by striking and hitting her with his hands and fists.

In *State v. Perkins*, 32 Wn. (2d) 810, 204 P. (2d) 207, quoting from *State v. Hartley*, 25 Wn. (2d) 211, 170 P. (2d) 333, we said:

"This court has often stated that instructions must be considered as a whole, and if, when so considered, they properly state the law and include all the elements which constitute the crime charged, they are sufficient, even though some one of them may omit some essential part. [Citing cases.]"

■ We do not think that the jury could have been misled by the inclusion of the words "either with or without a weapon" in instruction No. 8 when the following instruction stated explicitly the elements necessary to a conviction of the crime charged. Taking into consideration all the instructions given by the court, we are convinced that appellant was not prejudiced by the use of the quoted words in instruction No. 8.

Appellant's fourth assignment of error is that the court erred in denying his motion in arrest of judgment or in the alternative for a new trial. He argues that there was no evidence of a beating with his hands and fists.

■ In his second written statement, however, which we have heretofore set out, he stated: "I struck her. I was trying to hit her behind the ear to stun her. I struck her a half dozen times perhaps with my open hand. . . ."

There was testimony by the prosecuting witness that her attacker beat and hit her. This evidence was sufficient, in conjunction with the two written statements, to sustain the jury's verdict of guilty to the charge of beating with his hands and fists.

■ The extrajudicial confession of a person charged with the commission of a crime, standing alone, is not sufficient to establish the *corpus delicti*. However, if, as in this case, there is independent proof thereof, such confession may then be considered in connection therewith, and the *corpus delicti* may thus be established by a combination of the independent proof and the confession. *State v. Meyer,* 37 Wn. (2d) 759, 226 P. (2d) 204, and cases cited.

The trial court did not err in denying the motion in arrest of judgment.

Appellant's argument in support of his contention that the court erred in denying his motion for a new trial is based upon alleged prejudicial misconduct of the deputy prosecuting attorney in referring to another criminal offense during his argument to the jury. Appellant's objection to the deputy's remarks was sustained, and no further reference to the subject was attempted. Appellant made no motion

to have the remarks stricken and the jury instructed to disregard them, but argues here that their prejudicial effect upon the jury was such that no instruction could have cured the harm.

We need not, however, consider the effect of the deputy prosecutor's remarks upon the jury. The subject commented on by him in argument had been opened up by appellant in his cross-examination of the deputy prosecutor who had obtained the second written statement from appellant. The prosecution had a right to comment thereon in arguing to the jury. The remarks were germane to the issue whether the first statement was obtained by duress in that appellant was suffering from cold and exposure when it was obtained. Under these circumstances, we cannot hold that the deputy prosecutor's remarks prevented appellant from having a fair trial. The trial court did not abuse its discretion in denying appellant's motion for a new trial.

Appellant's trial was free from prejudicial error, and the judgment is, accordingly, affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.