STATE OF IOWA, Appellee, v. CHARLES WOLFF, Appellant.

CRIMINAL LAW: Killing Dogs—Conditions Justifying. To tell the
1   jury that no right exists to kill a dog, unless he was "caught in the *very* 'act'' of worrying, etc., some domestic animal, is too restrictive, yet harmless under a record not disclosing any present act of the dog, or any act approximately present, justifying the killing.

CRIMINAL LAW: Trial—Directing Verdict—Waiver. He who
2   moves for directed verdict before the close of *all* the evidence, suffers an adverse ruling, and fails to renew such motion at the close of *all* the evidence, thereby waives any error in such ruling.

CRIMINAL LAW: Trial—Instructions Lecturing Defense, or Argu-
3   mentative. Instructions, in effect, that good citizens should abide by the law and not assume to redress their own grievances *held* proper under the record.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

THURSDAY, DECEMBER 16, 1915.

THE plaintiff was prosecuted in the police court of Cedar Rapids for discharging firearms within the city limits, in violation of a city ordinance. From a judgment of convic-

tion, he appealed to the district court. Upon trial there, he was again convicted and has appealed to this court.—*Affirmed.*

*L. M. Kratz,* for appellant.

*C. F. Luberger,* for appellee.

EVANS, J.—The defendant is a resident of the city of Cedar Rapids, residing in the outskirts of the town and near the city limits. The facts in the case are not greatly in dispute. On September 4, 1914, the defendant shot and killed a dog upon his premises, within the city limits. This much he admits. His real defense is that, a few days prior, this dog had killed his cat and that, at the time of the shooting, the dog was about to pursue other domestic animals of the defendant and was doing damage to his growing crops. The defendant's testimony on the trial was as follows:

"Our place is on the west line of the city, and contains 40 acres. Our house stands back away from the road, almost in the northeast corner of the 40 acres. There are no houses within 60 rods from our house. We have chickens, a horse, cow and some cats on the place. On the morning of September 4th, I was digging potatoes down in the field about 30 rods to the southwest of the house, and there was a dog baying in the cornfield. I saw the dog so as to identify it. This dog, on the Sunday before, came in the yard and killed one of our cats. Some other dogs came there and killed another cat last Tuesday. This dog was baying in the corn there for a long time, perhaps an hour, right to the north of where I was digging potatoes and I thought it was time to go and drive it out: it was heading toward the house. When I got to the east end of the corn by the gate to go up towards the house, the dog was headed towards the barn. I drove it away and went in and got the shotgun and followed it down and killed it before it got off the premises. I never seen this dog I killed, kill chickens, but I have seen other dogs kill chickens."

### CROSS-EXAMINATION.

"I did not have a gun only just before I shot the dog. I killed a dog for killing chickens this spring. While my sister from Chicago was there, I was sleeping on the porch and just at daylight the chickens commenced to come up around the house and a dog came and grabbed one and I jumped out of bed and went in the house and got the shot-gun and killed it. I think I have a right to raise chickens on that place and have a cat. I saw this dog I killed on September 4th kill the cat. I seen the dog grab the cat and give it a shake, and throw it, and I ran for the gun. That was on the Sunday before September 4th. I killed a dog for killing chickens this spring. Years ago, I used to kill dogs there for killing turkeys. I have no lambs or sheep. Q. Were you ever convicted of a felony? A. Once when I was 2,500 miles away, some judge of this court fined me when I was in the state of California, fined me $25 and costs amounting to $50. That was in the year 1902 and I was 2,500 miles away when it was done. Q. What was the offense charged? A. Neighbors, like this neighbor Kepler, said they had the right to turn stock on the place, and he had a vicious horse that was there one morning, and when father went out to drive it away, it laid back its ears, and he hallowed to me to get the gun and shoot it, and I got the gun and shot it three or four times at long range. I never had a trial in the court; the court convicted me, the record shows, but I wasn't there. I never had my day in court. I didn't plead guilty. I was convicted. The lawyer done it without my consent."

The principal contention made for the defendant here is: (1) that the ordinance of the city upon which the prosecution is based is void, because in conflict with Section 2340 of the Code Sup., 1913; (2) that the defendant was justified in the shooting of the dog, under the provisions of Section 2340, Code Sup., 1913; (3) that the trial court erred in certain of its instructions.

I. On the question of the alleged conflict between the ordinance and Section 2340, Code Sup. 1913, we think it clear that the ordinance is readily capable of a construction which is entirely consistent with the section of the statute referred to. This was the construction put upon it by the trial court; and the defendant was given the full benefit of the provisions of the statute, unless it can be said that there was error in the instructions in that regard.

II. Section 2340, Code Sup., 1913, so far as applicable here, is as follows:

"It shall be lawful for any person to kill any dog caught in the act of worrying, maiming or killing any sheep or lamb, or other domestic animal."

1. CRIMINAL LAW: killing dogs: conditions justifying.

Applying this statute to the case, the trial court instructed the jury as follows:

"Instruction 5. It is no defense in this case that, in discharging a gun within the corporate limits of the city of Cedar Rapids, the defendant was shooting or shooting at a dog, unless the dog was caught at the time of being shot in the very act of worrying, maiming or killing any sheep or lamb or other domestic animal or was attacking or attempting to bite a person. The fact that, some days before the time the gun was fired off, Mr. Kepler's dog had killed a cat on the defendant's premises, did not justify the defendant in shooting him when he simply found him in the cornfield or elsewhere on the premises."

Defendant complains of this instruction in that it laid an undue burden upon the defendant. The particular complaint is directed against the expression "the *very* act of worrying". It is argued that this lays an emphasis which is not justified under the statute. It may be conceded, as argued, that whether the dog in question was caught in the act of worrying is a question of fact, which entitles the defendant to some degree of latitude as to what is meant by the phrase "caught in the act". As an abstract proposition, we are inclined to the view that the use of the word "very" in

this instruction was too restrictive. We can conceive of a state of facts where it might be prejudicial to a defendant. We are clear, however, that no such state of the evidence is presented herein. We have set out above the testimony of the defendant himself in full. His defense of privilege rests wholly upon this testimony. It is quite needless to discuss it in detail. Giving to it the fullest credence, it does not disclose any present act of the dog or an act approximately present which would justify the shooting. The statute, therefore, availed him nothing, and the trial court might properly have refused to instruct thereon at all. He suffered no prejudice, therefore, by the form of the instruction given.

III. At the close of the evidence for the state, the defendant moved for a directed verdict, and this was denied. It is now urged that such motion should have been sustained; because at that time, the evidence in the record was not sufficient to sustain a conviction.

2. CRIMINAL LAW: trial: directing verdict: waiver.

It is sufficient to say that we have always held that where, after the overruling of such a motion, the defendant introduces evidence in his own behalf, we will thereafter look only to the state of the evidence as a whole, and not to the state of the evidence as it was when the motion was made. We are also of the opinion that the evidence of the state, standing alone, was legally sufficient to sustain the verdict.

IV. The defendant complains of Instruction 6, which was as follows:

"Instruction 6. The ordinances of the city of Cedar Rapids provide for the prevention of dogs running at large and for their destruction under certain circumstances, and the law of the state provides for the recovery of any

3. CRIMINAL LAW: trial: instructions: lecturing defense, or argumentative.

damages done by a dog or dogs, and it is in the line of peaceable citizenship to abide by the law, instead of attempting to take the assumption of those rights into one's own hands."

The complaint is that the instruction had no function to

perform in the case and that it was a mere lecture to the defendant. The instruction thus complained of was explanatory, to some extent, of the provisions of the ordinance and the statute and the harmony to be found between them. In so far as the instruction partook of a lecture, it had the merit, at least, of being sound and wholesome. It was doubtless stimulated, to some extent, by defendant's admissions of past conduct. The scalps of domestic animals exhibited by the defendant's own testimony, all of which were acquired in defense of property, rather invited the general admonition contained in the instruction.

The evidence of defendant's guilt was quite conclusive, and there was little room for prejudice, so far as an adverse verdict is concerned. The fine imposed was $10 only, and this indicated no want of judicial poise in the trial court. If the payment of this fine should necessitate the selling of the gun, it would doubtless operate to the future benefit of the defendant.

The judgment below must be—*Affirmed.*

Deemer, C. J., Weaver and Preston, JJ., concur.