CITY OF DAVENPORT, appellee, v. WALTER T. CLAEYS, appellant.

No. 50666.

(Reported in 119 N.W.2d 755)

FEBRUARY 12, 1963.

McDonald, McCracken, McDonald & Carlin and Hoersch, Werner & Harbeck, all of Davenport, for appellant.

Robert D. McGrath, Assistant City Attorney, of Davenport, for appellee.

Larson, J.—This is an appeal from a judgment of the district court affirming a judgment of a police magistrate assessing a $100 fine and costs against defendant for discharging a firearm within the City of Davenport, Iowa, in violation of a city ordinance prohibiting same. Appellant admits he shot a medium-sized unlicensed dog on his premises within the city limits, but contends under sections 351.26 and 351.27, Code of 1962, his acts were privileged and that, regardless of the city ordinance, he had a right to shoot the dog. The district court disagreed and so do we.

Section 351.26, Code of Iowa, 1962, provides: "It shall be lawful for any person, * * * to kill any dog for which a license is required * * *." Section 351.27 provides: "It shall be lawful for any person to kill a dog, * * * when such dog is caught in the act of worrying, chasing, maiming, or killing any domestic animal or fowl, * * *."

It was stipulated that Ordinance 81, section 13, of the 1957 Municipal Code of the City of Davenport, Iowa, prohibits the discharge of firearms within the city limits of Davenport. The stipulation further provided that the facts as developed in the case of State of Iowa v. Walter T. Claeys wherein defendant was acquitted of the charge of cruelty to animals in violation of section 717.3, Code of 1958, could be considered by the court as the facts in this case. Substantially, they were as follows:

Mr. Albert Beard, a local resident and an employee of the Sewer Department, and Roger Reisman, a city policeman, testified for the prosecution. Beard testified he was driving his automobile in that area on January 2, 1962. He saw two dogs cross

the road in front of him. One belonged to defendant and the ownership of the other was unknown. The dogs proceeded up the lane to defendant's premises. Defendant stepped out of the back door and, when this dog was about 25 yards up defendant's driveway, shot it. The dog came running back, dragging its back legs underneath it, crossed the street and went into the school yard, where it died. Defendant placed the .22 caliber long rifle with a telescopic scope back in the house, got in his car and came down the driveway. The witness stopped him and asked, "Why did you shoot the dog?" Defendant replied, "If you can prove I shot the dog, I can prove why I shot him." The witness also stated that as far as he could see there were no animals or stock near this dog. He further testified that across the highway is the Green Acres School, that it was just starting, and that children were in the school yard at the time. On cross-examination the witness admitted he did not see what the dog was doing prior to the time he heard the gunshot. He could see the defendant's buildings looking up the driveway and conceded there was a possibility that animals could have been behind the buildings.

Patrolman Reisman testified he and Officer Donald Graham were called to investigate a complaint regarding this shooting. He was shown the "small, brown dog" lying in the snow. It had no license tag or collar. There was a wound in the right shoulder or rib cage. It appeared the bullet had entered from the right side and went to the left side, and had gone straight across. Mrs. Claeys showed him the gun defendant used. It was a Winchester automatic. He found a trail of blood extending some 100 to 150 feet up the driveway from the highway. When Mr. Claeys returned home he told the patrolman he had shot the dog from a window in an upstairs bedroom. On cross-examination the witness stated the bedroom window was about 50 feet from the lane, that he saw some cattle west and south of the house towards the end of the land, perhaps 300 to 400 feet from the house and 100 to 150 feet from the lane. The officer admitted it was possible the dog could have run a few feet before the first blood spot was picked up. The prosecution then rested.

Defendant's motion for dismissal based upon his lawful

right to kill an unlicensed dog was overruled. Defendant then took the stand in his defense and testified that he owned and farmed 280 acres in that locality, that the 160 acres upon which he resides lies directly west of the Green Acres School, that he had cattle, ducks and chickens on this farm, that he had in the past suffered a great deal of loss of chickens, ducks and pigs because of dogs and predatory animals, and that as he was preparing to leave the house on January 2, 1962, he heard a commotion down by his cattle yard. Dogs were barking and the cattle were milling around the feed bunks. Observing one medium-sized dog in the lane, he went upstairs and secured his rifle, opened the bedroom window and, when the dog came back toward him, he followed it in the rifle sight until it got abreast of the cement garage and fired. He did not know he hit it for it went on out the lane and left his farm. He further stated the dog was running up and down along the fence barking at his livestock when he first saw it, and that the livestock were stirred up and nervous. On cross-examination he stated he had shot and killed 17 dogs in his pig yards during the month of September which were in the act of worrying his livestock. He had since shot others, the number he did not know. September was his worst month because dogs followed the children to school and then came over to worry his stock.

Mrs. Claeys' testimony for the defense is not set out in the record because "for the purposes of this appeal her testimony would be merely cumulative."

Defendant then rested and renewed his motion for dismissal on the grounds previously urged and upon the further ground that the evidence showed that this dog was shot when in the act of "worrying" animals, and that the act of shooting it was privileged under section 351.27, Code, 1958 (1962).

The trial court denied the motion and found defendant guilty of discharging a firearm in the city, contrary to the provisions of a valid prohibiting city ordinance.

I. There is no irreconcilable conflict between the provisions of the city ordinance prohibiting the discharge of firearms within its limits and sections 351.26 and 351.27, Code, 1962. In his brief points defendant correctly contends that sections

351.26 and 351.27 of the 1962 Code give him the right to kill an unlicensed dog, or a licensed dog if it is worrying his animals. He argues that, since these sections of the Code grant him this privilege, he cannot be held criminally responsible for this killing by the city ordinance. He cites as authority State v. Wolff, 173 Iowa 187, 155 N.W. 165. There, however, the defendant was convicted in the police court of Cedar Rapids for the discharge of firearms within the city limits, in violation of a city ordinance. On appeal to the district court he was again convicted. On further appeal that conviction was affirmed. There, as here, defendant contended (1) that the ordinance of the city upon which the prosecution is based is void because in conflict with a section of the Iowa Code, (2) that the defendant was justified in the shooting of the dog under the provisions of section 2340, Code Supplement, 1913 (similar to the provisions of sections 351.26 and 351.27). On page 190 of 173 Iowa the court used this language in disposing of the first contention: "* * * we think it clear that the ordinance is readily capable of a construction which is entirely consistent with the section of the statute referred to. This was the construction put upon it by the trial court."

We presume here, in the absence of a showing to the contrary, that the trial court gave defendant the full benefit of the provisions of sections 351.26 and 351.27.

It will be noted these statutes make lawful the *killing* of a dog for which a license is required, or which is worrying, etc. domestic animals. On the other hand, the ordinance only prohibits the *killing* within the city limits *by the use of firearms*. Other methods are not prohibited by the ordinance, and we might suggest a club or pitchfork if the killing is to be considered lawful under circumstances appearing herein. Sections 351.26 and 351.27 do not make lawful the *shooting* of dogs, and the wisdom of that legislation appears when we consider the danger to school children and others in heavily populated metropolitan centers.

We conclude, therefore, there would be no such conflict here as would compel nullification of the city ordinance prohibiting the discharge of firearms within the city.

II. The question as to whether this dog was then in the act of worrying defendant's stock was a fact question for the court, which was acting without a jury. The evidence as to that fact is somewhat in conflict. Even if it be considered as undenied, we think the question remains as to whether defendant has shown circumstances such as to justify the use of firearms to drive off or kill this small dog. The trial court evidently determined he did not, and that decision is amply supported by substantial evidence.

III. There were no such circumstances shown here which, as a matter of law, would permit the use of firearms in killing a dog found on defendant's premises. While it is true generally one may use such force as is reasonably necessary to protect his life and property from injury or destruction, we do not find in this testimony any such circumstance as would justify defendant's use of firearms prohibited by the city ordinance. His defense of privilege rests almost wholly upon his own testimony. Giving to it the fullest credence, it does not disclose any present violent or vicious act of the dog which would justify the use of firearms in violation of the city ordinance. As we read the record, even in a light most favorable to defendant, this dog was merely running up and down the lane barking. If the barking was worrying the stock, killing, although perhaps permissible under the statutes, was not required at that time to protect defendant's property from serious damage or destruction. On the other hand, defendant's extreme measure seems to indicate a sadistic desire by defendant to kill all dogs because of the past acts of a few outlaws in the canine class. Certainly no compelling emergency appeared to justify his use of a gun in this instance.

The circumstances are not similar to those in State v. Ward, 170 Iowa 185, 152 N.W. 501, Ann. Cas. 1917B 978, where the defendant was charged with killing a deer in violation of a statute making it unlawful for any person other than the owner, or a person authorized by the owner, to kill any deer. Defendant argued that by virtue of his common-law right of self-defense the statute was not applicable, and, under the record made, his contention was upheld. In doing so, the court pointed out on

page 188 of 170 Iowa that the deer was killed not only while upon the defendant's premises but while he was actually engaged in the destruction of the defendant's property. We said: "Giving the testimony the fullest credence, the deer was one of great voracity. He was capable of doing and was threatening to do great injury to defendant's property." The conviction was reversed because it was tried on the theory that such a defense was not available. No comparable situation appears here. On the contrary, we have a small dog, not shown to be vicious or capable of doing great injury to defendant's property, and which may or may not have required a license (section 351.4, Code, 1962). It had done no harmful act, except perhaps to worry the stock by barking, and had not attacked defendant's stock or done any injury to his property. At least there was ample evidence to support the finding of the court, acting without a jury, that insufficient proof of self-defense was offered to justify the violation of the prohibition to use firearms in killing this small dog. Under this record we will not disturb that finding.

The danger to others within a city makes use of firearms undesirable and, while we recognize that the rapid expansion of city boundaries sometimes places operating farms within its borders and that such restricted use of firearms limits somewhat the broad privilege of self-defense, except perhaps in the case of the greatest urgency, such a restriction is not unreasonable or improper.

We are of the opinion that the evidence was legally sufficient to sustain the verdict, and that the killing, if at all permissible, did not justify the prohibited use of firearms within the city limits. The judgment of the district court must, therefore, be affirmed.—Affirmed.

All JUSTICES concur.